UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAEEM AKHTAR,<br><br>*Plaintiff,*<br>v.<br><br>YA-MEI CHEN, *et al*<br><br>*Defendants*. | Civil Action No. 3:21-cv-00658<br><br>**OPINION** |

CASTNER, District Judge

**I.     INTRODUCTION**

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants Ya-Mei Chen ("Chen"), Mark Koumans ("Koumans"), and Chad F. Wolf ("Wolf") (collectively, "Defendants") against Plaintiff Naeem Akhtar ("Akhtar" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 17.)  The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Local Civil Rule 78.1.  For the reasons stated below, Defendants' Motion is **GRANTED**.

**II.    BACKGROUND**

   *a.  Factual Background*

Plaintiff challenges the denial of his naturalization application by U.S. Citizenship and Immigration Services ("USCIS") on the grounds that Plaintiff was not "lawfully admitted to the United States for permanent residence."  (Compl. ¶16, ECF No. 1.)  The following facts are gleaned from Defendants' Statement of Undisputed Material Facts ("SUMF") (ECF No. 17-1), and not disputed by Plaintiff's Responsive Statement of Material Facts ("RSMF") (ECF No. 21-1).

1

Plaintiff is a native and citizen of Pakistan. (SUMF ¶ 1.) On or about September 4, 1999, Plaintiff entered the United States without being properly inspected pursuant to United States immigration law via the Canadian border. (*Id.* ¶ 2.) Plaintiff filed a request for "advance parole" on or around July 18, 2005, and the request was granted from September 22, 2005 to September 21, 2006. (*Id.* ¶¶ 3-4.) Plaintiff did not leave the United States pursuant to his grant of advance parole. (*Id.* ¶5.)

Plaintiff married a United States citizen on July 5, 2006. (*Id.* ¶ 6.) Plaintiff's spouse submitted a petition to classify Plaintiff as an immediate relative, a request that was granted on July 19, 2007. (*Id.* ¶ 7.) On May 7, 2010, Plaintiff submitted an application to USCIS for adjustment of status to lawful permanent resident. (*Id.* ¶ 8.) Plaintiff asserted that his mother was gravely ill, and also submitted an expedited request for advance parole, which was granted on June 10, 2010. (*Id.* ¶¶ 9-10.) Plaintiff left the United States on June 21, 2010, and returned on July 26, 2010. (*Id.* ¶¶11-12.) Upon his return to the United States, Plaintiff was "inspected and paroled in to resume the processing of his pending adjustment of status application." (*Id.* ¶ 12.)

On March 12, 2013, the USCIS approved Plaintiff's application for adjustment of status, and Plaintiff became a lawful permanent resident. (*Id.* ¶ 13.) However, on December 17, 2018, USCIS denied Plaintiff's N-400 application for naturalization on the basis that Plaintiff did not possess lawful nonimmigrant status at the time Plaintiff submitted his May 7, 2010 application for an adjustment of status to that of a lawful permanent resident. (*Id.* ¶ 14.)

In its decision denying Plaintiff's naturalization application, USCIS concluded that when Plaintiff filed for adjustment of status to lawful permanent resident on May 7, 2010, he did not

have a "lawful nonimmigrant status." (Notice of Decision, ECF No. 1, 29.)[1] According to USCIS, Plaintiff last entered the United States without inspection on September 4, 1999. (*Id.*) However, Plaintiff applied for adjustment of status on May 7, 2010, the same day he filed a request for advance parole. (*Id.*) USCIS concluded that Plaintiff's return to the United States on July 26, 2010, pursuant to the May 7, 2010 grant of advance parole, "effectively cur[ed] [Plaintiff's] entry without inspection," but "at the time [Plaintiff] filed [his] application for adjustment of status, [he] had not yet been paroled in and [was] ineligible for adjustment of status." (*Id.*) Because Plaintiff filed his application for advance parole at the same time as his application for adjustment of status, he "[f]or all intents and purposes … filed a frivolous application." (*Id.*) Because "[a]n applicant . . . must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication," and Plaintiff was not eligible for legal permanent resident status, Plaintiff ultimately was also not eligible for naturalization. (*Id.* 29-30.)

Plaintiff then requested a hearing on the denial of his application. (*Id.* ¶ 18.) USCIS denied Plaintiff's hearing request and reaffirmed the denial of Plaintiff's N-400. (*Id.*) In that decision, USCIS concluded that Plaintiff was not eligible for adjustment of status because Plaintiff was "not inspected and admitted or paroled into the United States prior to the submission of [his] application," which is a requirement to be eligible to adjust status.[2] (Decision, ECF No. 1, 24-25).

---

[1] USCIS' December 17, 2018 Notice of Decision is attached to Plaintiff's Complaint as Exhibit B and can be found at ECF No. 1. This Court will use the ECF numbers when referring to any pagination, and the Notice of Decision can be found at ECF No. 1, 28-32.

[2] USCIS' October 30, 2020 Decision is attached to Plaintiff's Complaint as Exhibit A and can be found at ECF No. 1. This Court will use the ECF numbers when referring to any pagination, and the Decision can be found at ECF No. 1, 24-25.

3

*b. Procedural History*

Plaintiff filed his Complaint in this Court on January 13, 2021. (Compl., ECF No. 1.) Defendants filed a Motion to Dismiss on July 7, 2021, and the parties engaged in the appropriate motion practice. (ECF Nos. 9-11.) This Court administratively terminated the pending Motion to Dismiss on February 23, 2022. (ECF Nos. 13-14.) The parties submitted a proposed briefing schedule to permit Defendants to refile the Motion to Dismiss as a Motion for Summary Judgment. (ECF Nos. 15-16.)

On March 8, 2022, Defendants filed the instant motion seeking Summary Judgment. (*See* Def's Mot. For Summary Judgment ("MSJ"), ECF No. 17.) Plaintiff submitted their Memorandum of Law in Opposition to the Motion for Summary Judgment ("Opp.") and their Responsive Statement of Material Facts. (ECF No. 21.) On April 6, 2022, Defendants filed a Memorandum in Support to support their Motion for Summary Judgment ("Supp."). (ECF No. 22.)

### III. LEGAL STANDARD

Summary Judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

Initially, the moving party bears the burden of demonstrating that there is no genuine dispute of material fact. *Celotex,* 477 U.S. at 322-23. Once the moving party has met that burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Mastushita Elec. Indus. Co. v. Zennith Radio Corp.*, 475 U.S. 574, 586 (1986). "Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Shah v. Thompson*, No. 2:11-3082, 2015 U.S. Dist. LEXIS 1920, at *6 (D.N.J. Jan. 8, 2015); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which a party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d. Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

This Court's review of Plaintiff's naturalization proceedings is governed by 8 U.S.C. § 1421(c): "A person whose application for naturalization . . . is denied . . . may seek review of such denial before the United States district court" in accordance with the Administrative Procedure Act, 5 U.S.C. § 701. The Court's review is *de novo*, and the District Court is responsible for making its own findings of fact and conclusions of law. 8 U.S.C. § 1421(c); *see also Abulkhair v. Bush*, 413 F. App'x 502, 508 (3d Cir. 2011).

## IV. DISCUSSION

The Court begins its analysis by noting that the parties appear to be in agreement that there are no remaining disputes of material fact, and that this matter is ripe for disposition by way of summary judgment. (MSJ 1; Opp. 8.) This Court agrees.

Before the Court engages in substantive analysis or discussion as to the merits of the arguments submitted by the parties, the Court must first begin with an overview of the relevant statutory provisions.

There are three main areas of immigration and naturalization law that are at issue in the present matter – the adjustment of status to a lawful permanent resident, the requirements for parole into the United States, and finally, the requirements for naturalization. The Court will address these issues in turn.

   a. *Adjustment of Status to Lawful Permanent Resident*

The Court will first turn to the requirements for the adjustment of status to a lawful permanent resident pursuant to 8 U.S.C. § 1255(a).

Section 1255(a) sets forth three eligibility requirements for adjustment of status: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). However, the statute makes clear that such eligibility is conditional – and requires that the applicant may only apply if they have been "inspected and admitted or paroled into the United States." *Id. See Medina v. Beers*, 65 F. Supp. 3d 419, 426 (E.D. Pa. 2014) ("Under the plain language of 8 U.S.C. § 1255, an alien seeking adjustment of status to lawful permanent resident status must initially

6

show that he or she was 'inspected and admitted or paroled into the United States.'" (quoting 8 U.S.C. § 1255).).

    b. *Parole into the United States*

As indicated above, and as is relevant in the instant matter, applicants may be eligible for adjustment of status if they have been "paroled" into the United States. *Id.* Parole into the United States is governed by 8 U.S.C. § 1182(d)(5)(A). It reads:

> The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Id.*

In addition to typical parole, the government has the authority to grant "advance parole" as well. Advance parole is a type of parole that authorizes individuals to enter the United States when they arrive at a port of entry without being regarded as a formal admission into the United States. 8 U.S.C. § 1182(d)(5). "Advance parole is used by nonimmigrants who are seeking adjustment of status so that they can leave the country and return without obtaining a new visa while they wait on their adjustment of status application." *Rotschild v. Napolitano,* No. 10-5404, 2011 U.S. Dist. LEXIS 94084, at *4 n.3 (D.N.J. Aug. 22, 2011). It is "offered on a discretionary basis by the Attorney General to an otherwise excludable and deportable alien so that the alien may return to

the United States after an approved trip abroad." *Basra v. Napolitano*, No. 09-4264, 2010 U.S. Dist. LEXIS 25430, at *7 n.3 (D.N.J. Mar. 17, 2010).

The Court notes that neither parole nor advance parole are to be considered "admission" into the United States. *See In re Arrabally* , 25 I. & N. Dec. 771, 778 (B.I.A. April 17, 2012) ("In short, an undocumented alien's departure under a grant of advance parole is qualitatively different from other departures, because it presupposes both that he will be permitted to return to the United States thereafter and that he will, upon return, continue to pursue the adjustment of status application he filed before departing.").

Finally, the Court will briefly summarize parole in place. The Court acknowledges the limited case law on this topic, and will rely, as the parties do, on the information provided by USCIS at its official websites. According to USCIS, parole in place "allows a foreign national who came into the United States without authorization by an immigration officer to stay for a certain period of time." *Immigration Options for Family of Certain Military Members and Veterans*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/sites/default/files/document/brochures/Brochure-Immigration_Options_for_Family_of_Certain_Military_Members_and_Veterans.pdf (revised November 2016). It appears that parole in place is typically reserved for "a spouse, child, or parent of an active-duty member of the U.S. armed forces, a member in the Selected Reserve of the Ready Reserve, or someone who previously served in the U.S. armed forces or the Selected Reserve of the Ready Reserve." *Policy Manual: Chapter 2 – Eligibility Requirements*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-2#footnotelink-50 (last visited February 21, 2023). According to USCIS, to request parole in place, an individual must submit a completed Form I-131, Application for Travel Document, as

8

well as other requested information. *Discretionary Options for Military Members, Enlistees and Their Families,* U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/military/discretionary-options-for-military-members-enlistees-and-their-families (updated April 25, 2022).  The Court notes that "[i]f DHS grants parole before a person files an adjustment application, the applicant meets the "inspected and paroled" requirement for adjustment." *Policy Manual: Chapter 2 – Eligibility Requirements*, https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-2#footnotelink-50 (last visited February 21, 2023).  However, "[p]arole in place does not permit approval of an adjustment application that was filed before the grant of parole." (*Id.*)

    c. *Naturalization*

Finally, the Court will turn briefly to the framework surrounding applications for naturalization.  "In a naturalization proceeding, the individual seeking to obtain the rights and privileges of U.S. citizenship bears the burden to prove by a preponderance of the evidence that he is so eligible." *Saliba v. AG of the United States*, No. 14-6174, 2015 U.S. Dist. LEXIS 125447, at *8 (D.N.J. Sep. 18, 2015).  "[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence. . . . [And] [t]he burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States . . . ." 8 U.S.C. § 1429.  *See Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637 (1967) ("[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect.").  "[S]trict compliance with all the congressionally imposed prerequisites to" citizenship is required. *Fedorenko v. United States*, 449 U.S. 490, 491. 66 L. Ed. 2d 686 (1981).  Thus, "when doubts exist concerning a grant of [citizenship], generally at least, they should be resolved in favor of the United States and against

9

the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928).  *See Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 179 n.2,7 (3d Cir. 2016) (collecting cases).

V.   ANALYSIS

a. *Plaintiff cannot establish that he was properly inspected and paroled into the United States for purposes of lawful permanent residence.*

To be eligible for naturalization, a Plaintiff must demonstrate that they were lawfully admitted to the United States.  *Koszelnik* , 828 F.3d at 179.  The Court therefore first considers whether Plaintiff's initial grant of permanent resident status in 2013 was in compliance with the immigration laws and concludes that it was not.

The Third Circuit has explained that the "'the term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity.'" *Gallimore v. Att'y Gen.*, 619 F.3d 216, 223 (3d Cir. 2010) (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)).  "As a result, an alien whose status has been adjusted to [legal permanent resident ("LPR")] — but who is subsequently determined to have obtained that status adjustment through fraud — has not been lawfully admitted for permanent residence because the alien is deemed, *ab initio*, never to have obtained [LPR] status." *Kadirov v. Sec'y United States Dep't of Homeland Sec.*, 627 F. App'x 125, 127 (3d Cir. 2015) (internal quotations and citations omitted).

To be considered lawfully admitted for purposes of naturalization requires more than simply having obtained status as lawful permanent resident. *Rotschild,* 2011 U.S. Dist. LEXIS 94084, at *26 .  "The law is clear that when USCIS finds that it erroneously granted LPR status, it is the immigrant's burden to adduce evidence that LPR status was in fact substantively proper." *Id.*

Here, it is clear to the Court that Plaintiff was not eligible for lawful permanent residence at the time it was granted in 2013. In its decision denying Plaintiff's naturalization application, USCIS asserts that Plaintiff last entered the United States without inspection on or about September 4, 1999. (Notice of Decision, 29.) Then on May 7, 2010, Plaintiff submitted, simultaneously, an application for naturalization and an application for advance parole. (*Id.*) To be eligible for lawful permanent residence, Plaintiff needed to already be inspected and paroled into the United States. (*Id.*) It is clear to this Court that Plaintiff was not already inspected and paroled into the United States at the time of his application to adjust his status to that of a lawful permanent resident because he submitted his application for advance parole at the same time and there was no advance parole already in place.

Plaintiff applied for advance parole for the first time on July 18, 2005. (SUMF ¶ 3.) Plaintiff's application was approved, and he was permitted to leave the country between September 22, 2005 and September 21, 2006. (*Id.* ¶ 4.) It is undisputed that Plaintiff never left the United States pursuant to the grant of advance parole, and thus was not inspected and paroled back into the United States at that time. (*Id.* ¶ 5.)

Plaintiff argues that USCIS did not consider Plaintiff's approved grant of advance parole from September 22, 2005 through September 21, 2006, and that Plaintiff's first grant of advance parole made him statutorily eligible for adjustment of status, despite Plaintiff's failure to actually depart the United States and be inspected and paroled upon return. (Opp. 15-16.) This argument is unavailing for several reasons.

First, Plaintiff's grant of advance parole from September 22, 2005 through September 21, 2006 did not render him automatically eligible for lawful permanent resident status. Advance parole is a mechanism that permits an individual without lawful immigration status to enter the

United States and seek parole or depart the United States and be permitted to re-enter upon their return while an application for admission is pending. *Traore v. Ashcroft*, 77 F. App'x 580, 583-84 (3d Cir. 2003) ("Advance parole is an administrative device that allows an alien present within the United States, who has a pending asylum application and wishes to leave the country temporarily, to obtain permission from the INS to be paroled into the country upon return, provided the other conditions for admissibility are met."). *See also Cheruku v. AG of United States*, 662 F.3d 198, 201 n.2 (3d Cir. 2011) ("Advanced parole permits an alien temporarily to remain in the United States pending a decision regarding his application for admission. . . . When used to enter the United States initially or after travel, this amounts to permission . . . for ingress into the country but is not a formal admission." (internal citations and quotations omitted)). Plaintiff did not leave the country pursuant to the September 22, 2005 through September 21, 2006 grant of advance parole. Therefore, Plaintiff was never inspected and paroled into the United States during that period of time, and thus was not statutorily eligible for adjustment of status to lawful permanent resident at the time he applied in May 2010. Moreover, Plaintiff's advance parole was only valid until September 21, 2006, thereby expiring years prior to his application in May 2010. (ECF No. 17-4.)

       Further, Plaintiff's inspection and parole into the United States on July 26, 2010, pursuant to the June 10, 2010 grant of advance parole, also did not make him eligible for lawful permanent resident status. By statute, to be eligible for adjustment of status, Plaintiff must have already been inspected and admitted or paroled into the United States at the time he filed his application on May 7, 2010. 8 U.S.C. § 1255(a) (stating that the "status of an alien *who was inspected and admitted or paroled into the United States* may be adjusted by the Attorney General . . . to that of an alien lawfully admitted for permanent residence if . . . the alien make an application for such

adjustment[.]") (emphasis added). Thus, Plaintiff's June 10, 2010 grant of advance parole and his subsequent inspection and parole on July 26, 2010 did not make him eligible for purposes of the application to adjust his status to that of a lawful permanent resident because it occurred a month after his application was submitted on May 7, 2010.

Plaintiff also argues that because USCIS has the authority to grant parole in place to make individuals eligible for adjustment of status, "then it was error for USCIS to conclude that it acted unlawfully when it did the same thing in Plaintiff's case." (Opp. 19.) This argument too, must fail.

First, USCIS, a source cited by Plaintiff himself, is very clear about the requirements necessary to apply for parole in place. In addition to documentation demonstrating some relationship or connection to the United States military, an applicant for parole in place must submit Form I-131. Nowhere in Plaintiff's moving papers, the SUMF, or the RSMF does Plaintiff indicate that he has applied for and was approved to parole in place. The Court concludes that no such application for parole in place was ever made or granted.

Instead, Plaintiff would have this Court construe his September 22, 2005 through September 21, 2006 grant of advance parole as substantively identical to parole in place. Yet, Plaintiff provides no authority to support this construction. Without authority that permits this Court to construe Plaintiff's grant of advance parole with parole in place, the Court is forced to conclude that Plaintiff had not been inspected and paroled in such a manner that would make him eligible for adjustment of status to lawful permanent resident pursuant to section 1255(a) simply by virtue of receiving a grant of advance parole and remaining in the United States.

Further, even if this Court were willing to accept that Plaintiff's application and grant of advance parole was equivalent to parole in place, Plaintiff would still remain ineligible for lawful

permanent resident status. According to USCIS, parole in place is granted in one (1) year increments. *Discretionary Options for Military Members, Enlistees and Their Families,* U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/military/discretionary-options-for-military-members-enlistees-and-their-families (updated April 25, 2022). Thus, even if the Court were to construe Plaintiff's advance parole as parole in place, it was no longer valid as of September 2006, or at the latest September 2007, well before Plaintiff sought to become a lawful permanent resident in 2010. Ultimately, the Court must conclude that Plaintiff's September 22, 2005 through September 21, 2006 grant of advance parole did not make him eligible for adjustment of status to a lawful permanent resident.

Plaintiff also broadly argues that 8 C.F.R. §103.2(b)(3) is invalid because it does not align with the requirements of Section 1255. (Opp. 19.) First, the Court notes that Plaintiff appears to take issue with 8 C.F.R. §103.2(b)(1), as 8 C.F.R. §103.2(b)(3) focuses on the requirement to translate any documents that are in a foreign language submitted to USCIS into English. *See* 8 C.F.R. §103.2(b)(3). The Court will now turn to 8 C.F.R. §103.2(b)(1). It states in relevant part, "[a]n applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication." 8 C.F.R. §103.2(b)(1). The Court concludes that the Code does not impermissibly impose additional restrictions or limitations to Section 1255. 8 C.F.R. §103.2(b)(1) simply requires that that an applicant demonstrate that they are eligible for the required benefit, here, lawful permanent resident status, and goes no further. As section 1255(a) simply explains the requirements for eligibility for adjustment of status to lawful permanent residence, such as having been inspected and admitted or paroled, the Code does not impermissibly "reverse the eligibility structure for adjustment of status set out by Congress," as Plaintiff would have this Court find. (*See* Opp. 21.)

Thus, the Court concludes that Plaintiff's failure to depart the country and be inspected and admitted or paroled during the grant of the September 22, 2005 through September 21, 2006 advance parole deems him ineligible for adjustment of status, as does his inspection and parole on July 26, 2010 upon return to the United States, months after he submitted his application for adjustment of status. Further, the Court concludes that it has no authority to construe Plaintiff's grant of advance parole as parole in place for purposes of adjustment of status, continuing to render Plaintiff ineligible for lawful permanent resident status. Finally, the Court concludes that 8 C.F.R. §103.2(b)(3) is valid and does not run afoul of Section 1255.

Ultimately, the Court is forced to conclude that USCIS was correct in their conclusion that Plaintiff was not eligible to file for adjustment of status to permanent lawful resident.

    b. *Plaintiff's ineligibility for lawful permanent resident status makes him further ineligible for naturalization.*

As the Court has made clear above, Plaintiff was not eligible for adjustment of status to a lawful permanent resident when he filed his May 7, 2010 application. "According to the [Board of Immigration Appeals], an alien who has obtained lawful permanent resident status by fraud, or who was otherwise not entitled to it, has not been lawfully admitted. The BIA has applied this standard not only to fraud cases, but also to instances in which the alien obtained permanent resident status as a result of a negligent mistake by the Government." *Koszelnik,* 828 F.3d at 180. The Third Circuit has endorsed this position, finding that "even in cases not involving fraud, a grant of permanent resident status does not meet the standard of 'lawful admission' if the applicant was not legally entitled to it for any reason." *Id.* (citing *Gallimore*, 619 F.3d at 224).

Thus, regardless of whether Plaintiff obtained his status as a lawful permanent resident by fraud or by mistake, it is clear that he never should have acquired such status. Further, in order to

15

pursue naturalization, Plaintiff bears the burden of showing that he lawfully attained permanent resident status. *Haser v. Brown*, 844 F. App'x 554, 556 (3d Cir. 2021). *See also Shah*, 2015 U.S. Dist. LEXIS 1920, at *6 ("An applicant seeking review of a naturalization denial bears the burden of establishing that he or she is entitled to naturalization.").

It is clear that pursuant to 8 U.S.C. § 1429, "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." *See also id*. § 1427(a) ("No person . . . shall be naturalized unless such applicant . . . has resided [in the United States] continuously, after being lawfully admitted for permanent residence . . . ."). Ultimately, because Plaintiff was not eligible for lawful permanent resident status, Plaintiff was not lawfully admitted to the United States, and thus is ineligible for naturalization. *See Saliba,* 828 F.3d at 193 ("lawful status as a permanent resident must be established under 8 U.S.C. §§ 1427(a) and 1429 for an applicant to be eligible for naturalization, and because [the plaintiff] cannot demonstrate that he was 'lawfully admitted for permanent residence' as that phrase has been interpreted uniformly by the courts of appeals, he cannot be naturalized.").

## VI. CONCLUSION

For the foregoing reasons, Defendants Motion for Summary Judgement is **GRANTED**. An appropriate Order will follow.

Date: <u>February 27, 2023</u>　　　　　　　　　　　　　<u>/s/ Georgette Castner</u>
　　　　　　　　　　　　　　　　　　　　　　　　　GEORGETTE CASTNER, U.S.D.J.